Filed 6/29/21  In re S.D. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.D. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B309223 (Super. Ct. Nos. 19JV00151, 19JV00154) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.D. et al.,<br><br>    Defendants and Appellants. | |

        D.D. (Mother) and A.D. (Father) appeal orders of the juvenile court declaring that their two minor children are adoptable, and terminating parental rights.  (Welf. & Inst. Code,

§§ 366.26, subd. (c)(1), 395, subd. (a)(1).)[1]  This appeal presents the sole issue of sufficiency of the inquiry by Santa Barbara County Child Welfare Services (CWS) and the court pursuant to the Indian Child Welfare Act (ICWA).  (25 U.S.C. § 1901 et seq.; § 224.2.)  We conclude that the inquiry was sufficient, and affirm. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 888-889 (*Austin J.*) [mere claim of Indian ancestry as opposed to claim of tribal membership does not impose duty to make further inquiry].)

*FACTUAL AND PROCEDURAL HISTORY*

In May 2019, CWS filed a second amended dependency petition pursuant to section 300, subdivision (b), alleging that Mother and Father have significant histories of alcohol and substance abuse and domestic violence committed in the presence of their minor children, S.D. and J.D.  CWS also alleged that Mother and Father failed to engage in voluntary maintenance services, had three previous referrals regarding domestic violence and substance abuse, and have criminal convictions relating to substance abuse.

On May 6, 2019, the juvenile court ordered the children detained and placed in the custody of CWS.  The court later sustained the allegations of the second amended petition after Mother and Father submitted to jurisdiction.  On July 18, 2019, the court held a disposition hearing.  It continued the removal of the children and ordered CWS to provide family reunification services, including parent education and substance abuse testing and treatment.

At the 12-month review hearing, the juvenile court terminated family reunification services and set the matter for a

---

[1] All statutory references are to the Welfare and Institutions Code unless stated otherwise.

permanent plan hearing.  Mother, now homeless, had an outstanding arrest warrant and had relapsed in treatment. Father had not participated in many of the recommended services and substance abuse testing.

On December 3, 2020, the juvenile court held a permanent plan hearing.  It found by clear and convincing evidence that the children were likely to be adopted, and it terminated parental rights.  (§ 366.26, subd. (c)(1).)

*ICWA Inquiries*

At the May 6, 2019, detention hearing, the juvenile court inquired whether Father, then present, had any Native American Indian heritage and, if so, which tribe.  Father replied, "I do not have any."  The court then informed Father that he would be requested to complete a form indicating his lack of Indian heritage.  That day, Father signed the "Parental Notification of Indian Status" Judicial Council form (ICWA-020) after checking the box indicating that he has no Indian ancestry as far as he knew.  Earlier, Father orally informed the CWS social worker that he did not have any Native American ancestry.

On June 11, 2019, Mother appeared in the dependency proceeding.  The juvenile court inquired whether Mother had any Native American Indian heritage and, if so, which tribe.  Mother replied, "No, Your Honor."  She also signed the Judicial Council form ICWA-020 after checking the box indicating that she has no Indian ancestry as far as she knew.  Earlier, Mother also orally informed the CWS social worker that she did not have any Native American ancestry.

On May 6, 2019, Mother's father, Robert L., spoke with a CWS social worker by telephone.  Robert L. stated that "he heard that the family might have Cherokee in their ancestry."  He

added that he heard this from his mother, Joan C., who stated "they might be Cherokee from her [Joan C.'s] mother's side." Robert L. also stated that Ruth C. was his grandmother and Joan C.'s mother, and John C. his grandfather. Ruth C. died about 20 years prior, and John C. died about 25 years prior. Joan C., three generations older than the minor children, was born in 1939 and now lived in Kingman, Arizona.

On September 19, 2019, CWS sent ICWA notice form ICWA-030 to the Bureau of Indian Affairs (BIA), the Secretary of the Interior, the Cherokee Nation, Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians. CWS provided identifying information (names, dates of birth, places of birth, and known addresses) regarding Mother, Father, Robert L., Joan C., Ruth C., and John C. CWS also sent notice of the dependency petition. The Indian tribes later responded that the children were not recognized as tribal members nor eligible to become members. On June 18, 2020, the juvenile court found that ICWA did not apply to S.D. and J.D.

Mother and Father contend that CWS and the juvenile court did not satisfy the further inquiry requirements of ICWA. (25 U.S.C. § 1901 et seq.; § 224.2.)

*DISCUSSION*

Mother and Father contend that CWS and the juvenile court failed to properly discharge their duties of further inquiry because they did not contact Joan C., the children's great-grandmother, who lived in Arizona. They add that CWS did not informally contact the tribes prior to sending formal notice, as required by section 224.2, subdivision (e)(2).

ICWA provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an

4

Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention."  (25 U.S.C. § 1912(a).)

An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4).)

ICWA does not itself impose a duty to inquire whether a child is an Indian child.  That duty is imposed by federal regulations.  (25 C.F.R. § 23.107(a).)  In section 224.2, California has enacted a statute that parallels the federal regulations.

Section 224.2, subdivision (c) provides:  "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.  The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."  Subdivision (d) of the section lists six circumstances, any one of which constitutes reason to know.  The only circumstance that is potentially applicable here is in subdivision (d)(1):  "A person having an interest in the child, including . . . a member of the child's extended family informs the court that the child is an Indian child."

Subdivision (e) of section 224.2 is pertinent here.  It provides, in part:  "If the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine

5

that there is reason to know that the child is an Indian child, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."

CWS contends no further ICWA investigation was required, relying upon *Austin J.*, *supra*, 47 Cal.App.5th 870. There, mother informed a social worker that she may have some Cherokee ancestry. *(Id.* at p. 878.) She did not check any of the boxes on the ICWA form indicating tribal membership. The juvenile court found that it did not have reason to know that the child is an Indian child as defined by ICWA. No notice was given to any tribe. The court ordered the children to be placed in foster care. The Court of Appeal affirmed.

In discussing the "reason to know" standard, *Austin J.* noted that until 2016 the standard was " 'information suggesting the child is a member of a tribe or eligible for membership . . . .' " (*Austin J.*, *supra*, 47 Cal.App.5th at p. 885.) That standard was changed to "a reason to know that a child '*is* an Indian child.' " (*Ibid.*) In formulating the standard, the BIA expressly rejected more inclusive language such as " ' "is or *could be* an Indian child" ' " or " ' "*may be* an Indian child." ' " (*Ibid.*; citing Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2020) Disposition Hearing, § 2.125[1], p. 2-419 [ICWA "does not apply to the many children involved in juvenile dependency proceedings who merely have some vague, distant or possible Indian heritage"].) *Austin J.* concluded mother's vague statements that the child may have some Cherokee heritage did not constitute information that the child is an Indian child. Tribal membership, not mere Indian heritage, is required for a child to be an Indian

6

child under ICWA.  Thus, the juvenile court did not err in failing to give the tribes notice of proceedings.  (*Austin J.*, at p. 887.)

*Austin J.* discussed the "reason to believe" standard under section 224.2, subdivision (e) requiring further investigation.  (*Austin J.*, *supra*, 47 Cal.App.5th at p. 888.)  The court noted that "reason to believe" is broader than "reason to know."  (*Ibid.*)  Nevertheless, a "reason to believe" requires a logical connection between facts and the belief.  (*Ibid.*) Information about a tribal connection that is too vague, attenuated, and speculative will not support a reason to believe.  (*Ibid.*)  Not everyone with Indian ancestry is a member of an Indian tribe or the biological child of a member of an Indian tribe.  (*Id.* at p. 889.)  Indian ancestry without more does not provide a reason to believe that a child is a member of a tribe or the biological child of a member.  (*Ibid.*)  Thus, a mere claim of Indian ancestry does not impose a duty to make further inquiry.  (*Ibid.*)

Here there is no evidence that anyone informed CWS or the juvenile court that the minor children were members of a federally recognized Indian tribe or eligible for such membership.  At most, Robert L.'s statements suggest that the children may have Cherokee ancestry.  Indian heritage or ancestry, however, is not the criteria for determining whether there is reason to know that a child is an Indian child.

The statements made by Robert L. to social workers reflect only a vague claim to Indian heritage, i.e., that "the family might have Cherokee in [its] ancestry."  That is not enough to support either "reason to know" or "reason to believe" the child is an Indian child.  Indian heritage is not enough to qualify as an Indian child.  The child must be either a member of a tribe or the biological child of a member of a tribe.  (25 U.S.C. § 1903(4).)

7

Mother and Father have not established that the duty of inquiry by CWS and the juvenile court was insufficient. (*Austin J., supra*, 47 Cal.App.5th 870, 887.)

The court in *In re T.G.* (2020) 58 Cal.App.5th 275, 294-297, disagreed with *Austin J.'s* conclusion that the mere claim of Indian ancestry does not trigger the duty to make further inquiry. *T.G.* stated: "[T]he imposition of a duty to inquire that is significantly more expansive than the duty to provide ICWA notice is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers like Los Angeles, may well have lost the ability to convey accurate information regarding their tribal status. . . . As a result, the information available at the outset of dependency proceedings will often be inadequate to ensure the necessary protection of the rights and cultural heritage of Indian children, Indian families and Indian tribes. [Citation.] General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved." (*Id.* at p. 295, fn. omitted.)

*Austin J.* is a better reasoned opinion. As *Austin J.* points out, and *T.G.* acknowledges, "Indian child" is defined in terms of tribal membership, not Indian ancestry. (*Austin J., supra*, 47 Cal.App.5th at pp. 888-889; *In re T.G., supra*, 58 Cal.App.5th at p. 294.) Section 224.2, subdivision (e) requires further inquiry if there is "reason to believe that an Indian child *is* involved in [the] proceeding," not "may be" or "could be" involved in the proceeding. (Italics added.)

In case after case, child welfare agencies have spent significant time, money, and resources in fruitless investigations of ICWA claims. Many, if not most, of these investigations are

initiated and sustained by nothing more than a parent or relative's bare assertion of Indian heritage.  No child is benefited by these fruitless searches, and many are harmed by the delay.  Neither the legislative history of ICWA outlined in *Austin J.* (*Austin J.*, *supra*, 47 Cal.App.5th at p. 885) nor the express language of section 224.2, subdivision (e) justifies launching a search for tribal membership based on a bare assertion of Indian heritage.  To require a further inquiry under section 224.2, subdivision (e), there must be some facts that would cause a reasonable person to have a "reason to believe" the child is an Indian child as defined by federal law, that is, a member of an Indian tribe or the biological child of a member of an Indian tribe.  Here there are no such facts.  A claim to Indian heritage is not enough.

The orders are affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

I concur:

PERREN, J.

9

TANGEMAN, J., Concurring:

I concur in the result reached here, not because no further inquiry was required, but because the appropriate notices were given as if Joan C. had confirmed the family's Indian ancestry.

The majority acknowledge that "the sole issue" presented in this appeal is the "sufficiency of the inquiry" mandated by the Indian Child Welfare Act (ICWA). (Maj. opn. *ante*, at p. 2.) The undisputed facts establish that Mother's father (the maternal grandfather) advised Child Welfare Services (CWS) "that the family might have Cherokee . . . ancestry." (Maj. opn. *ante*, at p. 3.) He heard this from his mother Joan C. (the maternal great-grandmother), who told him that "they might be Cherokee from her mother's side." (Maj. opn. *ante*, at p. 4.) Joan C. was alive and living in Kingman, Arizona. No one attempted to contact her to inquire further. On this record, the majority "conclude that the inquiry was sufficient." (Maj. opn. *ante*, at p. 2.) I disagree.

Under California law, "[t]he court [and] county welfare department . . . have an affirmative and continuing duty to inquire whether a child for whom a [dependency] petition under Section 300 . . . has been filed, is or may be an Indian child." (Welf. & Inst. Code, § 224.2, subd. (a).) "Inquiry includes, but is not limited to, asking the child, parents, . . . [and] *extended family members* . . . whether the child is, or may be, an Indian child . . . ." (*Id.*, subd. (b), italics added; see also Cal. Rules of Court, rule 5.481(a)(1) [party seeking termination of parental rights "must ask . . . extended family members . . . whether the child is or may be an Indian child"].)

Joan C. was the source of Indian ancestry information for the children. The burden of contacting her to make an appropriate inquiry was minimal. The point of an inquiry

requirement is to determine if a basis exists to take action to protect Indian culture and heritage, lest it disappear from the American landscape where it once thrived. To excuse the failure to even attempt to contact the identified source of Indian ancestry information is to render ICWA inquiry requirements meaningless. The record does not support the conclusion that making contact with Joan C. would require the expenditure of "significant time, money, and resources." (Maj. opn. *ante*, at p. 8.)

I nevertheless concur in the result because this error—and it was error—was harmless under the particular facts of this case. The Cherokee tribes, the Bureau of Indian Affairs, and the Secretary of the Interior were given notice with appropriate identifying information. The tribes responded that the children were not tribal members nor eligible to become members. That resolves the matter.

NOT TO BE PUBLISHED.

TANGEMAN, J.

2

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant D.D.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant A.D.

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Deputy, for Plaintiff and Respondent.